## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JOHANNA NEGRÓN ADAMES, on her own behalf; JOANLYN QUIÑONES NEGRÓN, on her own behalf; ROBERTO QUIÑONES NEGRÓN, on his own behalf**<br><br>Plaintiffs<br><br>vs.<br><br>**DORADO HEALTH, INC.; BAYAMON MEDICAL CENTER, CORP.; DR. EDWIN BÁEZ MONTALVO and the conjugal partnership formed with JANE DOE; DR. FRANCISCO DUBOCQ BERDEGUEZ and the conjugal partnership formed with PATTY POE; SIMED; PUERTO RICO MEDICAL DEFENSE INSURANCE COMPANY; THE MEDICAL PROTECTIVE COMPANY d/b/a MEDPRO GROUP; COMPANIES A-Z; JOHN DOE; PATTY DOE**<br><br>Defendants | CIVIL NO.<br><br>PLAINTIFFS REQUEST JURY TRIAL |

## COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** plaintiff through the undersigned legal representation, and very respectfully STATE, REQUEST AND PRAY:

## JURISDICTIONAL ALLEGATIONS

1. This Honorable Court is vested with jurisdiction over the parties and the subject matter of this litigation under and pursuant to the diversity of citizenship statute (Section 1332 (c) of Title 28 of the United States Code, 28 U.S.C. §1332), inasmuch as there is complete diversity of citizenship between the Plaintiffs, as residents of North Carolina, US and Tennessee, US, and the defendants, residents of the Commonwealth

of Puerto Rico, and the amount in controversy, exclusive of costs and interest, exceeds the amount of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00). As more specifically alleged below, all defendants are domiciled and permanent citizens of Puerto Rico within the meaning of 28 U.S.C. §1332 and Plaintiffs are domiciled and permanent citizens of States of the United States of America other than the Commonwealth of Puerto Rico.

2.      Venue is proper in this Court pursuant to Section 1391 of Title 28 of the United States Code, 28 U.S.C. §1391, because the claims asserted arose in this judicial district.

3.      Plaintiffs requests a jury trial.

4.      All codefendants are jointly and severally responsible to plaintiffs for the damages caused to them.

5.      The statute of limitations of the instant action was tolled on October 6, 2020 by the filing of a civil complaint before the Commonwealth of Puerto Rico's Court of First Instance, Bayamón part under civil number BY2020CV03094, which was voluntarily dismissed without prejudice on January 25, 2021.

## THE PARTIES

6.      Co-plaintiff **JOHANNA NEGRON ADAMES** (hereinafter "Johanna") is of legal age, single, and domiciled in 8113 Frenchorn Ln., Fayetteville, North Carolina 28314-6122 and her phone number is 910-882-5367. Johanna appears on her own behalf for her physical, emotional, and economical damages suffered by her, due to the negligent acts and/or omissions of co-defendants.

7. Co-plaintiff **JOANLYN QUIÑONES NEGRÓN** (hereinafter "Joanlyn") is of legal age, divorced, member of the U.S. Army and domiciled in 8113 Frenchorn Ln., Fayetteville, North Carolina 28314 and her phone number is 787-346-1955. Joanlyn is the daughter of Johanna and she appears on her own behalf for her economical and emotional damages due to the negligent acts and/or omissions by co-defendants which caused her mother's damages.

8. Co-plaintiff **ROBERTO QUIÑONES NEGRÓN** (hereinafter "Roberto") is of legal age, single, member of the U.S. Army and domiciled in 1144 Belvoir Ln., Clarksville, Tennessee 37040-1444 and his phone number is 931-229-0748. Roberto is the son of Johanna and he appears on his own behalf for his economical and emotional damages due to the negligent acts and/or omissions by co-defendants which caused his mother's damages.

9. Co-defendants **DORADO HEALTH, INC.** and **BAYAMON MEDICAL CENTER, CORP.** (hereinafter "**the hospital**") are the legal entities who are organized and exist under the laws of the Commonwealth of Puerto Rico and are the owners, administrators, and/or operators of a private hospital commercially known as Bayamon Medical Center located in Bayamón, Puerto Rico, which provides medical services to the general public and provided medical treatment to Johanna. These codefendants are the legal entities who are the owners, in totality or in part, or manage or administer or are the commercial or corporate name of said medical facility. These codefendants are the employers, contractors and/or extended medical privileges to practice medicine in Bayamon Medical Center to co-defendants Dr. Edwin Baez Montalvo and Dr. Francisco Dubocq Berdeguez and nurse personnel who provided medical treatment to Johanna at

the times of the facts alleged in this complaint. These codefendants are the employers of the nurses' staff, the respiratory therapists, escorts, interns, and any other person who provided medical treatment to Johanna at the times of the facts alleged in this complaint. These codefendants are jointly and vicariously liable for the negligent acts and/or omissions of its' employees, contractors, and medical faculty to whom it has extended privileges and provided medical treatment to Johanna. Codefendant Dorado Health, Inc. physical and mailing address is address is 100 Carr. 165, Suite 508, Centro Internacional de Mercadeo, Guaynabo, Puerto Rico, 00968-8052 and its phone number is (787) 774-6558. Bayamón Medical Center, Corp.'s physical address is Carr. Num. 2 KM. 11.3, Bayamón, PR 00960 and its mailing address is the same as Dorado Health, Inc.'s, which is 100 Carr. 165, Suite 508, Centro Internacional de Mercadeo, Guaynabo, Puerto Rico, 00968-8052.

10. Co-defendant **DR. EDWIN BAEZ MONTALVO** (hereinafter "Dr. Baez") is a gynecologist-obstetrics duly authorized in the Commonwealth of Puerto Rico. Dr. Baez is married to **JANE DOE**, with whom he has a conjugal partnership. At all times relevant to the facts of this case, Dr. Baez had medical privileges at co-defendant hospital and/or was an employee or contractor of said co-defendant. Dr. Baez was Johanna's obstetrics-gynecologist. Dr. Baez's address is Ave. Aguas Buenas, Bloque 16, Bayamon, PR 00959. Dr. Baez's phone number is 787-798-0344.

11. Co-defendant **DR. FRANCISCO DUBOCQ BERDEGUEZ** (hereinafter "Dr. Dubocq") is a physician duly authorized in the Commonwealth of Puerto Rico. Dr. Dubocq is married to **PATTY POE**, with whom he has a conjugal partnership. At all times relevant to the facts of this case, Dr. Dubocq had medical privileges at co-defendant hospital

and/or was an employee or contractor of said co-defendant. Dr. Dubocq publicly represents himself as a specialist in urology even though he has no special experience, preparation, or credentials as such. Dr. Dubocq's address is 68 Calle Santa Cruz, Torre San Pablo, Suite 101, Bayamón, PR 00961. Dr. Dubocq's phone number is 787-786-5305.

12. Co-defendant **SIMED** is an insurance company authorized to do business in Puerto Rico, who at the time of the facts alleged in this complaint had in full force and effect an insurance policy covering the damages alleged in this complaint and the responsibility of co-defendants Dr. Baez and Dr. Dubocq. SIMED's address is Edificio Centro Europa, 1492 Ave. Ponce de Leon, Office 501, San Juan, PR 00907. SIMED's phone number 787-641-2550.

13. Co-defendant **PUERTO RICO MEDICAL DEFENSE INSURANCE COMPANY** is an insurance company authorized to do business in Puerto Rico, who at the time of the facts alleged in this complaint had in full force and effect an insurance policy covering the damages alleged in this complaint and the responsibility of co-defendants Dr. Baez and Dr. Dubocq. Puerto Rico Medical Defense Insurance Company's address is The Corporate Building Center, #33 Calle Resolución, Suite 702, San Juan, PR 00920, and phone number is 787-999-7763.

14. Co-defendant **THE MEDICAL PROTECTIVE COMPANY d/b/a MEDPRO GROUP** is an insurance company authorized to do business in Puerto Rico, which at the time of the facts alleged in this complaint had in full force and effect an insurance policy covering the damages alleged in this complaint and the responsibility of co-defendants Dorado Health Inc. and Bayamón Medical Center, Corp. Its address is Edificio World

Plaza 906, 268 Ave. Muñoz Rivera, San Juan, PR 00918, and phone number is 787-304-8686.

15.     Co-defendants **COMPANIES A-Z** are legal entities that at the times relevant to these facts owned, operated, managed, and/or administered, in whole or in part, and were solely or partially responsible for the administrative and medical issues of any of the codefendant's medical entities to provide all or part of the medical and/or administrative services.  In the alternative, they are other legal entities that caused or contributed to causing the damages to plaintiffs. Also, and in the alternative, they are insurance companies which at the time the facts of this case took place had in full force and effect insurance policies in favor of codefendants.

16.     Co-Defendants **JOHN DOE** and **PATTY DOE** are all codefendants of unknown identity that caused and contributed to causing plaintiffs damages. Their identities will be revealed once they are known through discovery.

17.     All of the named defendants are jointly and severally responsible to plaintiffs for the damages caused to them. All defendants fictitiously named herein, will be correctly named once their identities are determined.

## THE RELEVANT FACTS

18.     Johanna was a 51-year-old woman and mother of two children of legal age who worked full time as an investigator of matters of clients at Claro Puerto Rico. Except for hypothyroidism, Johanna had no other significative medical or psychiatric conditions.

19.     Johanna developed a vaginal bleeding and went to Dr. Baez's, Ob/Gyn, office, who ordered an endovaginal sonogram which reflected fibroids in her uterus. Said sonogram reflected that the endometrium and the ovaries were normal. A fibroid is a

benign and not cancerous growth which grows in the muscle tissue of the uterus. The only alternative for treatment offered by Dr. Baez to Johanna was a hysterectomy and bilateral salpingo-ooforectomy. A hysterectomy is a surgery in which the totality of the uterus is extracted and the bilateral salpingo-ooforectomy is a surgery in which both ovaries and fallopian tubes are extracted.

20.     The hysterectomy and bilateral salpingo-ooforectomy were performed by Dr. Baez at Bayamon Medical Center Hospital on October 14, 2019. The pathology of the extracted tissues reflected that Johann had fibroids, which were benign, in the uterus. Johanna was discharged by Dr. Baez on October 16, 2019. Joanlyn had come to Puerto Rico to accompany Johanna after her surgery. She remained in Puerto Rico from October 11 to the 19, 2019. Roberto also came to Puerto Rico to be with Johanna and stayed from October 19 to the 25, 2019.

21.     As a result of the surgery and the damages, Joanlyn began to experiment anxiety episodes and severe anguish and she visited Dr. Pryant Carlton, psycologist, who recommended the anxiolytic Zoloft. The general doctor, Dr. Bart M. Territo, gave her the prescription for Zoloft on December 6, 2019.

22.     A couple of days after the surgery, Johanna visited Dr. Baez's office for a post-operative evaluation. Johanna had discomfort in the abdominal area and back. Dr. Baez evaluated her and told her everything was okay.

23.     During the first days of November 2019, Johanna called Dr. Baez and told him she had a severe pain in the upper part of her stomach. Dr. Baez told her, without evaluating her physically and without asking her to go to his office, that she had gastritis and told her to go to the pharmacy to buy antiacids and to take them.

24.     On November 8, 2019, Johanna had to go to Dr. Baez's office. She had no prior appointment with Dr. Baez. Johanna had high blood pressure and a very severe pain on her abdomen and back. Dr. Baez gave her a prescription for more antiacids but did not evaluate her physically and gave her an order for a CT Scan.

25.     On November 9, 2019, an abdominal and pelvic CT Scan was performed to Johanna at CT Radiology Center in Bayamon. The radiologist found, among other things, that the left ureter was dilated with a big collection of liquid on the left part of the pelvis with pressure on the large intestine and that the contrast was in the collection of liquid. The radiologist's impression was that the possibility of the laceration of the left distal ureter should be considered.

26.     On that same day, November 9, 2019, Johanna had to go to Bayamon Medical Center's emergency room. There Johanna was treated by the emergency room doctor for complaints of pain on the lower left quadrant of the abdomen and pain when urinating. The emergency room doctor admitted Johanna to the hospital as an in-patient and requested a consultation to Dr. Baez.

27.     After being evaluated, it was diagnosed that Johanna had hydronephrosis of the left kidney, left ureteral obstruction and urinoma. Hydronephrosis happens when there is an accumulation of urine in the kidney caused by an obstruction in the ureter. A urology consultation on November 11, 2019 showed a ureter obstruction, a big urinoma and left hydronephrosis. Johanna experienced a lot of pelvic pain, non the less, at any time did Dr. Baez informed Johanna of the possibility of her left ureter being lacerated.

28.     On November 11, 2019, an CT of the abdomen and pelvis with and without contrast was performed on Johanna. The reading of said CT showed that Johanna had

hydronephrosis and hydroureter of the left kidney, that the left ureter was compressed due to a collection of liquid of 13.3cm x 13.5cm x 10.6cm, that she had moderately delayed contrast excretion in the left kidney, that the collection of liquid extended from the vaginal cuff and that the images suggested that there was communication between the ureter and the collection of liquid. This meant that Johanna had suffered an injury to her ureter during the hysterectomy and urine was going into her pelvis. Still, Dr. Baez did not tell Johanna anything regarding the possibility of an injury to her ureter.

29.     Another CT was again performed on November 12, 2019, which showed, among other things, that there was an area of extravasation of contrast of the ureter, that the collection of liquid was stable and that it was compressing the ureter. This means that Johanna had suffered an injury to her ureter during the hysterectomy and urine was going into her pelvis. Still, Dr. Baez did not tell Johanna anything regarding the possibility of an injury to her ureter.

30.     On November 13, 2019, Dr. Dubocq performed a cystoscopy and a left rigid uroscopy, a retrograded pyelogram and it was intended and failed to insert a "double-J" stent on Johanna.  During a cystoscopy and uroscopy a catheter is inserted through the urethra and the bladder until the left ureter is reached. The retrograded pyelogram is a study in which the ureters are observed through X-rays. A stent "double-J" is an surgical additament that is inserted in order to manage ureteral obstructions. Finally, a nephrostomy tube was inserted, which is a tube that is inserted through the patient's back until the kidney in order to help collect the accumulated urine due to the obstruction. It was attempted to insert a "double J" stent and the attempt failed. Dr. Dubocq graphically described through a drawing in the medical record <u>that the ureter had been transected</u>

and there was no continuity from one side to the other. He described that the side of the ureter that was going out of the kidney was occluded.



Still, neither Dr. Dubocq nor Dr. Baez informed Johanna that her left ureter was transected.

31.    On November 14, 2019, Johanna was submitted to a surgical process in which a percutaneous drainage was inserted by making an incision on her skin and inserted a tube up until where the collection of urine was which was drained.

32.    Co-defendants Dr. Dubocq and Dr. Baez took Johanna to the operating room on November 18, 2019 to perform an exploratory laparotomy, which is an open surgery performed with the purpose of exploring the abdomen. Said surgery was needed since Johanna had fever, a big collection of urine over her bladder associated with hydronephrosis and obstruction of her left ureter. During this second surgery, co-defendants Dr. Baez and Dr. Dubocq perforated the small intestine, which required that a general surgeon be called in to fix the damages caused. The general surgeon had to perform a resection of the intestine which required that part of Johanna's intestine be removed. Also, the general surgeon had to release surgical sutures that attached the ureter to the vagina and that had been put in by Dr. Baez during his first surgery. In said surgery, Dr. Dubocq tried to repair the transected ureter and repaired lacerations to the

bladder through incorrect and contraindicated operation techniques since he is not a duly qualified urologist. Said repair to the ureter was not successful. Neither Dr. Dubocq nor Dr. Baez or the hospital informed Johanna <u>that her left ureter had been transected</u> and they kept it a secret.

33.     After the surgery, Johanna had a hypertensive crisis and a pleural effusion, in which liquid is accumulated in pleural cavity outside the lung, which required that Johanna be intubated and mechanically ventilated for 3 days and admitted in the ICU.

34.     While admitted in the ICU, Dr. Baez told Johanna *"Johanna, the operation was a complete success, rest, rest, do not worry about anything"*, which obviously was not true.

35.     Joanlyn came back to Puerto Rico to be with Johanna from November 20 to 24, 2019.

36.     On December 3, 2019, a CT was performed to verify that the nephrostomy, the "double J" and percutaneous drainage where in place and it was determined that there was still liquid inside Johanna's pelvis.

37.     On December 7, 2019, an X-ray of Johanna's abdomen was performed. The reading of said X-ray reflected that there was a rupture of the ureter, among other things. At that time, Joanlyn was with Johanna in the ICU. Dr. Baez made them a drawing on a napkin and told then *"I have an instrument like this, one that seals, and cuts and it looks like without meaning to cut and I <u>sealed </u>this part of the ureter"*.

38.     Even though the findings indicated that Johanna still had a <u>transected</u> or <u>lacerated</u> ureter, Dr. Baez discharged Johanna on December 13, 2019. <u>Neither Dr. Baez</u>

nor Dr. Dubocq told Johanna that her ureter was lacerated or transected, and they discharged her putting her life at risk. That time, Johanna spent 34 days at the hospital.

39.     Joanlyn return to Puerto Rico to be with Johanna from December 14 to 24, 2019. Roberto also came to Puerto Rico from December 21, 2019 until January 2, 2020.

40.     On January 7, 2020, Johanna began to experience chills, fever, and an intense pain in her abdominal area and back and had to return to Bayamon Medical Center's emergency room, where she was admitted to the hospital as an in-patient. She was diagnosed with a malfunctioning of the nephrostomy tube.

41.     On January 7, 2020, the nephrostomy tube was replaced.

42.     On January 9, 2020, a left perianal aspiration guided by CT was performed. This is a procedure to extract liquid from the retroperitoneal area.

43.     Johanna was discharged on January 12, 2020. Again, Johanna was discharged from the hospital without being informed that her left ureter was lacerated or transected and putting her life at risk.

44.     On January 16, 2020, Johanna visited Dr. Mari Esposito, psychologist, to received therapy for severe major depression caused by all these events. At the present, she has been to 16 appointments with Dr. Esposito, and she continues treatment as of today and it is expected that she continues receiving treatment in the future.

45.     On January 17, 2020, Johanna visited Dr. Salvador Mercado, interventional radiologist, at Hospital Auxilio Mutuo after being referred to him by Dr. Baez. She was evaluated by Dr. Mercado and she was given referrals for laboratories and X-rays and she was told to come to a following appointment on January 22, 2020 for a procedure.

46.     On January 22, 2020, Dr. Mercado performed a nephrostogram and nephrostomy with catheterization of the ureter as an intent to recanalize the ureter. Sadly, the recanalization failed, and it could no be achieved.

47.     Johanna was referred to Dr. Carmen Cabrera, urologist at the External Clinics of ASEM of Centro Medico, by Dr. Baez. Johanna visited Dr. Cabrera for the first time on February 4, 2020. On February 25, 2020, the results of the nephrostogram reflected an injury to the left ureter. Due to these results, a reconstructive surgery of the ureter was programed for April 3, 2020 at Hospital Universitario.

48.     On February 25, 2020, Johanna continued with psychiatric treatment and prescriptions of Lexapro and Xanax with Dr. Jose A. Alonso for severe major depression caused by all these events. As of today, Johanna continues and is expected to continue psychiatric treatment with Dr. Alonso.

49.     Johanna visited Dr. Baez to inform him that Dr. Cabrera was going to perform a surgery. Dr. Baez indicated Johanna that he wanted to be present during Dr. Cabrera's surgery alleging that he wanted to see how that surgery was performed. Due to that comment, Johanna emotionally destabilized due to the lack of trust that Dr. Baez inspired in her.

50.     Due to this, on March 9, 2020, Johanna was involuntarily admitted to Hospital San Juan Capestrano where she was diagnosed with severe major depression caused by all these events. She received psychological, psychiatric treatment and medications for severe major depression such as Lexapro and Xanax. She was discharged on March 16, 2020.

51.     On April 5, 2020, Johanna had to go back to Bayamon Medical Center's emergency room due to intense pain on her ribs and lower back. She was admitted by the emergency room doctor and Dr. Baez was consulted. During said admission multiple studies and CT were performed and it was determined that the nephrostomy had been clogged and it was changed. Johanna was discharged on April 8, 2020.

52.     The surgery scheduled for April 3, 2020 was cancelled since the hospital had to close due to a COVID-19 outbreak and was rescheduled for May 12, 2020. On that date, Johanna was admitted to the Hospital Oncológico at the Recinto de Ciencias Medicas complex to repair the injury to the ureter. This surgery is called a "ureteroneocystomy with vesico-psoas hitch and doble J and lysis of adherences". This complicated and tedious surgery lasted almost 7 hours. In said surgery, Hospital Oncológico's urologists reimplanted the left ureter to Johanna's bladder. The diagnosis was that the left ureter had been transected or cut completely, therefore having no continuity of the ureter and it had detached completely. Johanna was discharge on May 16, 2020.

53.     On May 29, 2020, was the first post-operative visit of Johanna with Dr. Cabrera.

54.     On June 26, 2020, the results of the laboratories and renal sonogram were obtained.

55.     On August 11, 2020, a renal sonogram was performed which showed that Johanna had kidney stones and hydronephrosis.

56.     On August 12, 2020, Dr. Maria Esposito, psychologist, diagnosed Johanna with post-traumatic stress disorder along with severe major depression.

57.     On August 19, 2020, Johanna had to go the Bayamon Health Center's emergency room due to a second infection of the urinary track. She had right lumbar pain and nausea. She was diagnosed with urine infection, prescribed Cipro 500 every 12 hours, urine culture, Flexeril 10mg and Celebrex 200 every 12 hours and she was sent home.

58.     Johanna's appointment for August 25, 2020 was cancelled due to the COVID-19 pandemic, but she must continue with follow up appointments to monitor her renal function due to the latent risk of losing her left kidney.

59.     On August 28, 2020, Johanna had a tele-consult with a doctor from Servicios Medicos in Levittown who told her to continue taking antibiotics for the urinary tract infection.

60.     On September 25, 2020, Johanna had a tele-consult with Dr. Luis A. Paris from Servicios Medicos in Levittown who changed the antibiotic and order Sulfametoxazole for 7 days to treat the urinary track infection.

61.     Now living permanently in North Carolina, Johanna is expected to continue medical and psychiatric treatment there.

62.     Johanna has had to monitor and will need to continue to monitor her renal function of her left kidney due to the possibility that the damage to the ureter may cause her to lose her left kidney.

## CAUSE OF ACTION: MEDICAL-HOSPITAL NEGLIGENCE AND MEDICAL MALPRACTICE

63.     The proximate and only cause of plaintiffs' damages and of all the damages suffered by Plaintiff was the combined negligence of all co-defendants. Specifically, co-defendants failed to provide the correct medical treatment to the patient and incurred in

medical malpractice by providing medical treatment below the standards established by the medical community.

64. Co-defendants opted to not follow the medical security rules that protect patients as established by the medical practice. The negligent acts and omissions of co-defendants caused and continue to cause serious damages to plaintiffs. All co-defendants are jointly and severally liable for the damages caused to plaintiffs.

65. Co-defendants failed to provide the necessary diagnoses and medical treatment to prevent the damages suffered by Johanna.

66. In particular, Dr. Baez was medically negligent by failing to follow one of the basic rules in surgeries which requires that the surgeon be always conscious of the localization of both ureters. When opening the intestinal wall, the surgeon must identify both ureters in all its trajectory from the kidneys to the bladder.

67. In Dr. Baez's operative report from October 14, 2019, he negligently did not identify the ureters and did not follow their complete trajectory from the kidneys to the bladder.

68. After finishing the surgery, Dr. Baez negligently did not review the ureters and failed to make sure that they had not suffer any damage. Dr. Baez's operative report failed to document that he checked the ureters before closing the patient. If any injury to the ureter would have occurred during the surgery, it could have been resolved during that same surgery.

69. Due to Dr. Baez's negligence, he transected and/or lacerated the ureter and fixed a part of the ureter with surgical sutures to the vagina. Since he did not check the

ureter before closing the patient, he did not see the damages and loss the opportunity to repair it.

70.     Dr. Baez negligently failed to make the incision sufficiently big in order to visualize everything in the operating field. At that time, Johanna was morbidly obese and due to the small incision, it caused Dr. Baez to lack visualization of the ureters and he transected the left one.

71.     During the second surgery performed on November 18, 2019, in which Dr. Baez and Dr. Dubocq participated, both doctors performed a surgery negligently and caused a perforation to Johanna's intestine. Said perforation required that they called a general surgeon to come to the hospital during the surgery and repair the laceration. For that reparation, the general surgeon had to remove part of the lacerated intestine and reconnect the intestine with an anastomosis.

72.     During said surgery, they found out that the ureter had been sutured to the vagina, which demonstrates co-defendants negligence and poor operative practices. Not only did the ureter was transected, but its lower part was sutured to the vagina.

73.     Also, Dr. Dubocq was negligent since he could not effectively repair the ureter's transection and he limited his intervention in installing a double J, which would never repair the ureter's transection and prolonged Johanna's suffering, who had to wait until May 12, 2020 for the corrective surgery to be performed at Hospital Oncológico. Dr. Dubocq lacks experience, training and the necessary qualifications of an urologist to perform the surgical procedure called "ureteroneocystomy with vesico-psoas hitch and double J and lysis of adherences" that Johanna required.

74.     Co-defendants maliciously and intentionally hid from Johanna that they had transected the ureter, which was kept in secret.

75.     Co-defendants Dorado Health, Inc. and Bayamón Medical Center, Corp. are vicariously liable for the acts and/or omissions of its employees, contractors, doctors with privileges and floor nurses and emergency room nurses.

76.     Codefendants Dorado Health, Inc. and Bayamón Medical Center, Corp. are liable for permitting Dr. Dubocq, a doctor without the necessary accreditations nor pertinent studies in urology to perform urological procedures at its hospital. Dr. Dubocq is the urologist that the hospital assigns when urology consults are requested.

77.     Co-defendants Dorado Health, Inc. and Bayamón Medical Center, Corp. are jointly and severally, directly and vicariously liable for being negligent in granting privileges to Dr. Dubocq since he is not a urologist with formal training and lacks training experience and qualifications as a urologist.

78.     Also, co-defendant Dorado Health, Inc. and Bayamón Medical Center, Corp. are jointly and severally, directly and vicariously liable since, after Johanna's first surgery, she went on multiple occasions to the hospital's emergency room trusting her treatment to said hospital. On her second visit the emergency room, Johanna was admitted on November 9, 2019 and operated by Dr. Baez and Dr. Dubocq, who negligently perforated her intestine and failed to repair the transected ureter.

79.     Co-defendants Dr. Dubocq and Dr. Baez acted with malice and grave disparagement to Johanna's life, informed consent and security by not telling her, as soon as they knew, that the left ureter had been lacerated or transected during the hysterectomy of October 14, 2019. By omitting said information, not only did they put

Johanna's life and security at risk, but they violated her right to make decisions about her own body. All the procedures and subsequent hospitalizations by Dr. Dubocq and Dr. Baez at the hospital were performed without Johanna's informed consent. Also, Dr. Dubocq and Dr. Baez, on 4 occasions, discharge Johanna from the hospital with her ureter transected, which inevitably caused the drainage and double J malfunctions and the repeated accumulation of urine in her pelvis, without her knowledge or consent. Said actions by co-defendants requires punitive damages.

80.    All co-defendants violated Johanna's right of giving an informed consent for all exams, procedures, surgeries, and others. Even after knowing that Johanna's left ureter was transected, all co-defendants failed to notify her of that before taking her informed consent and explaining the purpose, risks, and consequences of every procedure.

**DAMAGES**

81.    The damages suffered by Johanna were caused by the combine negligence of all co-defendants, who are jointly and severally, vicariously, and directly liable. Co-defendants offered Johanna a contraindicated medical-hospital treatment lower that the established standards of the medical community.

82.    As a direct consequence of the violations of the standard of medical attention and providing a medical treatment below said standard and the lack if implementation of the necessary medical protocols, Johanna did not received adequate medical treatment in diagnosing and treating her condition.

83. As a direct consequence of the gross negligence of co-defendants, Johanna was subjected to 2 totally unnecessary surgeries that put her at risk of death and laceration to her organs and skin and countless days at the hospital.

84. Johanna has had to visit the hospital's emergency room on 3 occasions due to co-defendants negligence.

85. Johanna has been hospitalized on 4 occasions due to co-defendant's negligence.

86. Johanna has required and will require infinite studies, laboratories, and surgical procedures since the first and second surgeries. Her physical damages are permanent.

87. Johanna was deceived by Dr. Baez and Dr. Dubocq, who hid the fact, even after knowing, that her left ureter had been transected since October 14, 2019.

88. Johanna is at risk of losing her left kidney due to all the damages she has suffered because of co-defendants. She will have to monitor her renal function constantly.

89. Johanna has suffered and will continue to suffer countless of urinary tract infections that require the consumption of antibiotics and other medication constantly, which cause damage to her organs.

90. Johanna has suffered grave emotional and moral damages due to co-defendants negligence. Johanna suffered a hypertensive crisis during her second surgery and had to be intubated for 3 days. She also developed severe major depression and posttraumatic stress disorder and difficulty to sleep due to these events for which she receives psychological and psychiatric treatment and had to be admitted to Hospital San Juan Capestrano. Johanna has needed to take more than 50 psychological and

psychiatric therapies and will continue to need those therapies in the future and consume medications such as Xanax, Lexapro, and other antidepressants and anxiolytics.

91.     Johanna has lost her social life completely. Due to her physical and emotional damages, Johanna has not been able to return to her interpersonal relationships as she did before.

92.     Johanna has not been able to go back to work since October 14, 2019 due to the damages suffered by her and it is expected that she cannot ever return. She made $23,118.54 annually at her work at Claro Puerto Rico, which she has lost as of today and is expected to keep losing.

93.     Joanlyn has suffered grave scares, anxiety, and severe major depression due to co-defendants negligence. She had to leave her family and travel to Puerto Rico on 4 occasions to take care of Johanna. She had to pay $1,800.00 on plane tickets and she also pays $196.00 of Johanna's monthly car payments and $200.00 monthly since Johanna has not been able to return to work. These are costs that will continue. Joanlyn's emotional damages are valued in no less than $500,000.00.

94.     Roberto has also suffered grave anguish, depression, and emotional damages due to co-defendants negligence. He had to travel to Puerto Rico on two occasions to help Johanna. He spends approximately $2,170.00 in plane tickets and had to leave his job and family for those days. He paid $196.00 monthly on Johanna's car payments and $200.00 monthly for her expenses since Johanna has not been able to return to work. These are costs that will continue. Roberto's emotional damages are valued in no less than $500,000.00.

95.    Johanna's income loss is valued at an amount larger that $750,000.00, which she will not earn due to co-defendants actions if she is incapacitated and cannot be part of the work force any longer.

96.    Johanna's emotional and physical damages as described are valued in no less than $2,000,000.00.

97.    Johanna's medical costs and the ones she will have to incur are substantial and are valued in no less than $500,000.00 and will significantly increase if she loses her kidney due to defendant's negligence.

98.    Co-defendants merit punitive damages for the same amount to the compensatory damages due to their actions in treating Johanna's life with grave disparagement.

**WHEREFORE**, it is respectfully requested from this Honorable Court to grant all allegations in this complaint for plaintiff and against defendants with the imposition of costs, damages, interest, and a reasonable amount of attorney's fees.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 16th day of February, 2021.

S/Pedro F. Soler Muñiz
PEDRO F. SOLER-MUÑIZ
USDC-PR NO.  212,909
*Counsel for Plaintiffs*
Pedro F Soler Muñiz
1357 Ashford Ave.
PMB 106
San Juan, PR 00907
Tel. 787-774-6522; Fax. 787-706-8680
psoler@pedrosolerlaw.com

S/Alejandra C. Martínez Méndez
ALEJANDRA C. MARTINEZ MENDEZ

S/Alejandro J. Fernandez Muzaurieta
ALEJANDRO    J.    FERNANDEZ
MUZAURIETA
USDC-PR 223706
*Counsel for Plaintiff*
Alejandro J. Fernandez Muzaurieta
PO BOX 16264
San Juan, PR 00908
Tel. 939-337-4740
alejandrofernandezz@yahoo.com

USDC/PR NO. 303111
*Counsel for Plaintiffs*
Pedro F. Soler Muñiz
1357 Ashford Ave.
PMB 106
San Juan, PR 00907
Tel. 787-774-6522; Fax 787-706-8680
[amartinez@pedrosolerlaw.com](mailto:amartinez@pedrosolerlaw.com)