THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JOHANNA NEGRÓN ADAMES,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **DORADO HEALTH INC.**, *et al.*, <br><br> *Defendants*. | Civ. No. 21-01077 (MAJ) |

**OPINION AND ORDER**

**I.     Introduction**

Before the Court is a Partial Motion for Summary Judgment (the "Motion") filed by Defendants Dr. Francisco Dubocq-Berdegüez ("Dr. Dubocq"), and his insurer Sindicato de Aseguradores para la Suscripción Conjunta de Seguros de Responsabilidad Profesional Médico-Hospitalaria ("SIMED") (collectively referred to as "Defendants"). (**ECF No. 84**).[1] Defendants' Motion aims to dismiss the medical malpractice claims by Plaintiff, Johanna Negrón-Adames *et al.* (hereinafter "Plaintiff") (**ECF No. 63**), which relate to injuries that she allegedly sustained due to medical procedures at Bayamón Medical Center. For the reasons set forth below, Defendants' Motion is **DENIED**.

---

1     In addition to analyzing Defendants' Motion for Partial Summary Judgment the Court has also considered the following submissions for this Opinion and Order: Plaintiff's Amended Complaint (**ECF No. 63**), Defendants' Statement of Uncontested Material Facts (**ECF No. 85**), Responses filed by Plaintiff (**ECF Nos. 103, 104**), Motion Submitting Certified Translations (**ECF No. 121**), and Replies by Defendants (**ECF Nos. 139, 140**).

## II. Findings of Fact

After applying Federal Rules of Civil Procedure, Rule 56(c) and Local Rule 56(c),[2] the undisputed facts of the case for purposes of the instant motion are set forth as follows: Plaintiff is a 51-year-old woman who initially sought medical intervention for vaginal bleeding. (**ECF No. 85 at 1 ¶ 1**). On September 11, 2019, she sought medical treatment from Dr. Edwin Báez-Montalvo (hereinafter "Dr. Báez") her primary OB–GYN physician (**ECF No. 103-11 at 1**) who diagnosed Plaintiff with uterine fibroids and recommended a complete removal of her uterus. (**ECF Nos. 85 at 1 ¶ 2; 85-1 at 5**). On October 14, 2019, Dr. Báez performed a hysterectomy and oophorectomy[3] on Plaintiff at Bayamón Medical Center. (**ECF No. 85 at 1 ¶ 2**). Following the surgical procedures, the hospital discharged Plaintiff two days later. *Id.* at 2 ¶ 3.

On November 8, 2019, Plaintiff visited Dr. Báez's offices complaining of epigastric pain.[4] *Id.* at 2 ¶ 4; (**ECF No. 140 at 3 ¶ 4**). On November 9, Dr. Báez had a CT scan performed on Plaintiff. *Id.* at 4 ¶ 5. Thereafter, Plaintiff was admitted to Bayamón Medical Center's Emergency Room. *Id.* at 4 ¶ 7. Admission notes from November 9, indicated the

---

[2] As will be described below, Plaintiff's Opposition Statement of Material Facts (**ECF No. 104**) failed to adhere to Local Rule 56(c) when contesting Defendants' Statement of Uncontested Material Facts ("SUMF") (**ECF No. 85**). As a result, the Court has only considered proposed facts that are in accordance with Local Rule 56. The Court has also disregarded all arguments, conclusory allegations, speculation, and improbable inferences disguised as facts. *See Cruz v. Hosp. Episcopal San Lucas, Inc.*, 16-cv-2959, 2022 WL 2704484, at *3 (D.P.R. July 12, 2022) (*citing Forestier Fradera v. Municipality of Mayaguez*, 440 F.3d 17, 21 (1st Cir. 2006); *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). Likewise, the Court has disregarded all purported uncontested facts that fail to adhere to Rule 56(c)(1) which provides in pertinent part that, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record . . ." *See Alston v. Town of Brookline*, 997 F.3d 23, 45 (1st Cir. 2021).

[3] *Oophorectomy* is the surgical removal of one or both ovaries. Ashley A. Lawson & Rebecca M. Rentea, *Oophorectomy*, StatPearls, *https://www.ncbi.nlm.nih.gov/books/NBK559235/* (last updated May 8, 2022).

[4] "The epigastric area is between the lower end of the chest bone and the navel." Nat'l. Inst. Of Diabetes and Digestive and Kidney Diseases, *Indigestion* 2 (2008), https://www.niddk.nih.gov/-/media/Files/Digestive-Diseases/Indigestion_508.pdf.

possibility of ureteral injury. (**ECF No. 85 at 2 ¶ 4, 3 ¶ 8**). That same day, Dr. Báez sought consultation with a urologist regarding Plaintiff's condition. *Id*. at 3 ¶ 9. Dr. Báez spoke with Dr. Dubocq, a physician authorized to practice medicine in Puerto Rico, over the phone, explaining that Plaintiff had a lesion in the ureter, and that he needed Dr. Dubocq's expert consultation regarding Plaintiff's condition. *Id*. On November 10, 2019, Dr. Báez made a formal request for Dr. Dubocq's consultation and received a response the next day. *Id*. at 3 ¶ 10. Before Dr. Dubocq examined Plaintiff, he reviewed a specialized CT scan and found signs of urinary obstruction (hydronephrosis, hydroureter, and obstructive uropathy).[5] *Id*. at 3 ¶ 11.

On November 11, Dr. Dubocq began evaluating Plaintiff as part of his consultation. *Id*. at 3 ¶ 11. Dr. Dubocq suggested a percutaneous nephrostomy ("PCN"), a procedure to relieve the blockage in Plaintiff's kidney, based on the possibility of a ureteral injury. *Id*. at 3 ¶ 12. On November 12, a specialist, Dr. Yarelis Vázquez, performed the PCN. *Id*. at 3 ¶ 13. Dr. Dubocq noted that this procedure alleviated Plaintiff's side pain. *Id*. at 4 ¶ 14.

On November 13, Dr. Dubocq performed a cystoscopy and ureteroscopy.[6] *Id*. at 4 ¶¶ 14-15. He also unsuccessfully attempted to insert a left "JJ" (double J) ureteral stent. *Id*. at 4 ¶ 15. During his attempt to insert the JJ stent, Dr. Dubocq encountered a blind

---

[5] "Hydronephrosis" is the swelling of one or both kidneys due to a blockage in the urinary tract that prevents urine from flowing properly. This blockage can occur in the ureter, bladder, or urethra, and when it happens in the ureter, it's referred to as "hydroureter." *See* (**ECF No. 85 at 3 n.4**). Obstructive uropathy is a broader term for conditions where urinary flow is hindered, either due to physical blockages or functional issues, leading to hydronephrosis as urine backs up into the kidneys. *See* (**ECF No. 85 at 3 n.5**).

[6] A cystoscopy is a procedure where a tube with an eyepiece is used to look inside the urethra and bladder, while a ureteroscopy is the same, but instead inspects ureters and kidneys. Nat'l. Inst. of Diabetes and Digestive and Kidney Diseases, *Cystoscopy & Ureteroscopy*, https://www.niddk.nih.gov/health-information/diagnostic-tests/cystoscopy-ureteroscopy (last reviewed July 2021).
An intravenous pyelogram is an x-ray procedure used to locate problems in the kidneys, ureters, or bladder. Nat'l. Inst. of Diabetes and Digestive and Kidney Diseases, *Urinary Tract Imaging*, https://www.niddk.nih.gov/health-information/diagnostic-tests/urinary-tract-imaging (last reviewed April 2020).

loop,[7] which prevented the insertion of the JJ stent. *Id.* at 4 ¶ 17. Dr. Dubocq then discussed these findings with Dr. Báez, indicating that he was unable to place the JJ stent and that the urinary tube might be completely cut (transected). *Id.* at 4 ¶ 18.

On November 18, 2019—before being discharged—Dr. Báez, and Dr. Dubocq performed a surgical procedure to attempt to repair the transected ureter. (**ECF Nos. 103-1 at 5-7, 10-11; 103-3 at 13-14**).[8] After the surgery, between November 18 and November 20, Plaintiff suffered a hypertensive crisis, pulmonary edema, and pleural effusions. (**ECF No. 103-1 at 10-11**). As a result, she was placed on mechanical ventilation. *Id.*[9]

On December 3, a CT scan was performed on Plaintiff, revealing fluid remained in her pelvis. (**ECF No. 103-2 at 3-4**). On December 7, an abdominal X-ray indicated a rupture of Plaintiff's ureter. (**ECF No. 103-2 at 8**). Even though the findings indicated that Plaintiff still had a transected or lacerated ureter, neither Dr. Báez nor Dr. Dubocq told Plaintiff that her ureter was lacerated or transected.[10] Dr. Báez discharged Plaintiff on December 13. (**ECF No. 85-2 at 1**).

On January 7, Plaintiff returned to Bayamón Medical Center's emergency room presenting with chills, fever, and intense abdominal and back pain. (**ECF No. 103-6 at**

---

[7] A blind loop is a tube closed at the end. (**ECF No. 104-3 at 6**).

[8] The Court incorporates this allegation as an undisputed fact in this Opinion and Order. The fact in question is drawn from the well-pleaded allegations asserted in Plaintiff's Amended Complaint, (**ECF No. 63 ¶ 33**) is supported by the record, and uncontroverted by Defendants. Furthermore, the Court is mindful of resolving disputes of cognizable facts in favor of the non-movant, Plaintiff, which lends itself to the admission of this fact. *González-Tomasini v. U.S. Postal Serv.*, 594 F. Supp. 3d 355, 380 (D.P.R. 2022) (citing *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011)).

[9] Same as *supra* n. 8. (**ECF No. 103-1 at 10-11**).

[10] The Court had to turn to the Amended Complaint to summarize the factual background of this case because the moving party, Defendants, did not offer the necessary facts to shed light into what happened to Plaintiff and provide context to the uncontested material facts. (**ECF No. 63**).

**1-2**). Plaintiff was discharged from Bayamón Medical Center on January 12, following complications associated with a malfunctioning nephrostomy tube. *Id*.

In mid-January, Plaintiff consulted Dr. Salvador Mercado, an interventional radiologist at Hospital Auxilio Mutuo, upon referral from Dr. Báez. (**ECF Nos. 103-1 at 11:23-12:1; ECF No. 103-3 at 15:7-10**). Dr. Mercado evaluated Plaintiff, issued referrals for lab tests and X-rays, and scheduled a follow-up procedure. (**ECF Nos. 103-1 at 11:17-12:1; 103-3 at 15:7-10**). On January 22, Dr. Mercado attempted, but ultimately failed to place a "double-J". (**ECF No. 103-1 at 11:17-12:4**). Plaintiff was discharged thereafter.

Continuing forward to April 5, Plaintiff returned to Bayamón Medical Center's Emergency Room, complaining of lower back pain and rib pain. (**ECF No. 103-9 at 1**). On April 8 she was discharged, and surgery was scheduled for a later date. *Id*. On May 12, Dr. Cabrera executed a surgical procedure to affix a urinary tube directly to Plaintiff's bladder. (**ECF No. 103-10 at 1**). Plaintiff was subsequently discharged from the hospital on May 16. *Id*.

Finally, on August 19, 2020, Plaintiff visited the emergency room at Bayamón Health Center, suffering from a urinary tract infection, right lumbar pain, and nausea. Medical staff diagnosed her with a urine infection, prescribed medication, and discharged her to her home.[11]

---

11    Same as *supra* n. 10.

### III. Legal Standard

#### a. Summary Judgment

Summary judgment is appropriate when there is no dispute as to any material fact and only questions of law remain. *White v. Hewlett Packard Enterprise Co.*, 985 F.3d 61, 68 (1st Cir. 2021); *Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir. 1996). "A genuine dispute is one that a reasonable factfinder could resolve in favor of either party." *Flood v. Bank of Am. Corp.*, 780 F.3d 1, 7 (1st Cir. 2015) (citing *Gerald v. Univ. of P.R.*, 707 F.3d 7, 16 (1st Cir. 2013)). "A fact is 'material' if it 'has the potential of affecting the outcome of the case.'" *Taite v. Bridgewater State U., Bd. of Trustees*, 999 F.3d 86, 93 (1st Cir. 2021) (quoting *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 (1st Cir. 2011)).

To win summary judgment on a particular issue, the moving party must show that "there is an absence of evidence to support" the nonmoving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The party moving for summary judgment "bears the initial burden of showing that no genuine issue of material fact exists." *Feliciano-Muñoz v. Rebarber-Ocasio*, 970 F.3d 53, 62 (1st Cir. 2020) (citation omitted). This burden is met "when the moving party demonstrates that the opposing party has failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *E.E.O.C. v. Kohl's Dept. Stores, Inc.*, 774 F.3d 127, 131 (1st Cir. 2014) (internal quotations and citation omitted).

In opposing a motion for summary judgment, the plaintiff "bears the burden of producing specific facts sufficient to" defeat summary judgment. *González-Cabán v. JR Seafood Inc.*, 48 F.4th 10, 14 (1st Cir. 2022) (internal quotations and citation omitted). The Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Cochran v.*

*Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Furthermore, the Court must review the record as a whole and avoid assessing the credibility or gauging the weight of the evidence presented. *Pina v. Children's Place*, 740 F.3d 785, 802 (1st Cir. 2014).

The goal of "summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Carrozza v. CVS Pharmacy, Inc.*, 992 F.3d 44, 56 (1st Cir. 2021). In short, for Defendants to prevail on summary judgment, they "must demonstrate that, even admitting well-pleaded allegations in the light most favorable to Plaintiff, the applicable law compels a judgment in its favor." *Vega-Martínez v. Hosp. San Antonio Inc.*, 18-cv-1055, 2022 WL 4539850, at *3 (D.P.R. Sept. 28, 2022).

### b. Local Rule 56

Summary judgment motions must be compliant with Local Rule 56(c), which states, in relevant part:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts . . . by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a **separate section additional facts**, set forth **in separate numbered paragraphs** and supported by a record citation as required by subsection (e) of this rule.

Local Rule 56(c) (emphasis added).

"The purpose of this anti-ferret rule is to require the parties to focus the district court's attention on what is, and what is not, genuinely controverted. Otherwise, the parties would improperly shift the burden of organizing the evidence presented in a given

case to the district court." *Mariani–Colón v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007) (internal quotations and citations omitted).

As set forth in Local Rule 56, the Court will only consider as genuine opposition those statements of material facts that the objecting party has properly denied or qualified in strict compliance with Local Rule 56(c). Local Rule 56(b) aims to "create an organized and clear representation of those issues of fact which are truly contested between the parties." *Ortiz v. Mun. de San Juan*, 19-cv-1671, 2023 U.S. Dist. LEXIS 164601, at *9 (D.P.R. Sep. 14, 2023) (quoting *Total Petroleum P.R. Corp. v. Colon*, 819 F. Supp. 2d 55, 60 (D.P.R. 2011)).

From the outset, Plaintiff's Opposition Statement of Material Facts ("Opposing SUMF") fails to adhere to L. Cv. R. 56(c). (**ECF No. 104**). As mentioned, L. Cv. R. 56(c), mandates that parties opposing a motion for summary judgment must submit "a separate, short, and concise statement of material facts." A denial is "[a] statement that something is not true." *Martínez-Suárez v. Mansiones de Garden Hills Apartments*, 556 F. Supp. 3d 1, 7 (D.P.R. 2021), *appeal dismissed,* No. 21-1808, 2022 WL 1087021 (1st Cir. Jan. 6, 2022) (quoting *Natal-Pérez v. Oriental Bank & Tr.*, 291 F. Supp. 3d 215, 219 (D.P.R. 2018)). Importantly, "a party's denial or qualification of a proposed fact [must be] strictly limited to the issue therein raised." *Martínez-Suárez*, 556 F. Supp. 3d at 7 (quoting *Acevedo-Padilla v. Novartis Ex Lax, Inc.*, 740 F. Supp. 2d 293, 298 (D.P.R. 2010), *rev'd and remanded on other grounds,* 696 F.3d 128 (1st Cir. 2012)).

Throughout Plaintiff's Opposing SUMF, the phrase "it is affirmatively alleged" is injected to each one of her denials. (**ECF No. 104**). She thereafter addresses a litany of issues with each denial that are not "strictly limited to the issue therein raised" by

Defendants' proposed SUMF.¹² These denials run afoul of Local Rule 56(c). *See Pejcic v. Choice Hotels Intl., Inc.*, 511 F. Supp. 3d 85, 86 (D.P.R. 2020) (finding plaintiff's opposition to statement of materials facts failed to adhere to L. Cv. R. 56(c) by neglecting to deny or qualify proposed facts in a separate format. Instead, plaintiff offered a narrative discussion, thereby improperly shifting the burden of evidence organization onto the Court).

Plaintiff's denials of Defendants' SUMF (**ECF No. 85**) burdens the record with extraneous and unsolicited details, thereby deviating from Local Rule 56(c)'s demand for a "separate, short, and concise statement" (**ECF No. 104**). Given these deviations, the Court is within its discretion to accept Defendants' SUMF in lieu of Plaintiff's non-compliant responses. *See Malavé-Torres v. Cusido*, 919 F. Supp. 2d 198, 207 (D.P.R. 2013) (The Court is not required to comb through Plaintiff's responses to identify additional facts); *Levine-Díaz v. Humana Health Care*, 990 F. Supp. 2d 133, 140 (D.P.R. 2014) (disregarding additional facts provided by plaintiff when plaintiff did not include a separate section of additional facts, instead, she proposed additional facts in the same numbered paragraphs wherein she admitted, denied or qualified defendant's proposed factual statements). The Court will thus deem the statements enumerated in ¶¶ 2, 4, 5, 7, 9, 10, 12, 14, 15, 18 of Defendants' SUMF (**ECF No. 85**) as uncontested. *See* L. Cv. R. 56(e).¹³

---

¹² Had Plaintiff complied with L. Cv. R. 56 she would have denied the relevant proposed statements and thereafter included a ***separate section*** with her extraneous "affirmative[] alleg[ations]." *See* L. Cv. R. 56(c).

¹³ L. Cv. R. 56(e) specifies the consequences for not complying with L. Cv. R. 56(c): "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted ***unless properly controverted***." L. Cv. R. 56(e) (emphasis added).

Similarly, Plaintiff's admissions to Defendants' SUMF run afoul of the Local Rules. (**ECF No. 104**). As an example, Plaintiff admits to Defendants' SUMF ¶ 17.[14] However, Plaintiff then adds the following information alongside that proposed fact:

> . . . it is ***affirmatively alleged*** that Dr. Francisco Dubocq wrote in his note and testified that when entering using a retrograde approach, he saw a blind pouch at the distal ureter. This made it impossible to enter into the left mid ureter, and it was decided to wait two months before considering a left distal ureteral reconstruction in order to allow the healing of the surgical scars . . . It is ***affirmatively alleged*** that Dr. Francisco Dubocq testified that there was a blind loop, which is a closing at the end, and he couldn't put the double J stent . . . It is ***affirmatively alleged*** that Dr. Francisco Dubocq testified that on November 13, 2019, he knew that there was no continuity on Johanna Negrón-Adames' left ureter and that he believed that in this case the transection of the ureter was total because there was no continuity.

(**ECF No. 104 at 8 ¶ 17**) (emphasis added).

Needless to say, the information Plaintiff adds to ¶ 17 is far from "a separate, short, and concise statement." *See* L. Cv. R. 56(c). Even if Plaintiff's response to ¶ 17 is viewed as a qualification rather than an admission, her approach still runs afoul of L. Cv. R. 56. "[A] qualification must clarify a statement of fact that, without clarification, could lead the Court to an incorrect inference." *Martínez v. Nordisk*, 397 F. Supp. 3d 207, 213 (D.P.R. 2019), *aff'd sub nom. Martínez v. Novo Nordisk Inc.*, 992 F.3d 12 (1st Cir. 2021). However, Plaintiff's added narrative goes beyond mere clarification and enters the realm of new allegations. *See Martínez-Suárez*, at 7 ("A qualification is '[a] modification or limitation of terms of language.'" (quoting *Natal-Pérez*, 291 F. Supp. 3d at 219)). Moreover, the additional information is not "limited to the issue therein raised" by Defendants. *See Nordisk*, 397 F. Supp. 3d at 213 ("denial or qualification of a proposed fact must be strictly limited to the issue therein raised. Any additional information shall

---

[14] Defendants' SUMF ¶ 17 states: "During his attempt to insert the JJ stent, Dr. Dubocq encountered a blind loop which was closed, and this prevented the insertion of the JJ stent." (**ECF No. 85 at 4**).

be included in a separate section in order to ease the Court's task." (quoting *Acevedo-Padilla*, 740 F. Supp. 2d 293 at 298)). Plaintiff's deviations from the standards set by L. Cv. R. 56, again burdens the Court's review of the record. The First Circuit has repeatedly held that litigants ignore L. Cv. R. 56 "at their peril." *Nordisk*, at 213 (citing *Cabán-Hernandez v. Philip Morris USA, Inc.*, 486 F. 3d 1, 7 (1st Cir. 2007)). Accordingly, the Court opts to reject the additional information Plaintiff provided as it relates to her Opposing SUMF ¶¶ 11, 13, 16, 17. (**ECF No. 104**).[15]

## IV. Discussion

### a. Medical Malpractice: Diagnosis and Treatment

In a diversity case, Puerto Rico's substantive law governs. *See Summers v. Fin. Freedom Acquisition LLC*, 807 F.3d 351, 354 (1st Cir. 2015). It has been well established, thar for a prima facie case of medical malpractice, a plaintiff must prove three separate elements: (1) a duty owed, defined as the minimum standard of professional knowledge and skill; (2) a breach of that duty through an act or omission; and (3) a direct causal link between the breach and the harm suffered. *See González-Arroyo v. Doctors' Ctr. Hosp. Bayamón, Inc.*, 17-cv-1136, 2021 WL 3134482, at *3 (D.P.R. July 23, 2021), *aff'd*, 54 F.4th 7 (1st Cir. 2022) (quoting *Santa Cruz-Bacardi v. Metro Pavía Hosp., Inc.*, 16-cv-2455, 2020 WL 249433, at *6 (D.P.R. Jan. 15, 2020)). "Puerto Rico holds health care professionals to a national standard of care." *López-Ramírez v. Toledo-González*, 32 F.4th 87, 91 (1st Cir. 2022) (quoting *Cortés-Irizarry v. Corporación Insular De Seguros*, 111 F.3d 184, 190 (1st Cir. 1997)). Physicians are presumed to have exercised reasonable care, and the plaintiff carries the burden of refuting this presumption. *López-Ramírez*, 32

---

[15] Plaintiff properly admitted Defendants' SUMF ¶¶ 1, 3, 6, 8, 11, 13, 16. (**ECF Nos. 85, 104**). Thus, the Court will deem said proposed facts uncontested.

F.4th at 91 (quoting *Rolón-Alvarado v. Municipality of San Juan*, 1 F.3d 74, 78 (1st Cir. 1993)).

Out of the three elements of a malpractice prima-facie case, the third element, causation, is pivotal. *See Marcano-Rivera v. Turabo Med. Ctr. Partn.*, 415 F.3d 162, 168 (1st Cir. 2005); *Cortés-Irizarry*, 111 F.3d at 190. A plaintiff must prove, by a preponderance of the evidence, that the doctor's negligent conduct was the factor that most probably caused the plaintiff's damage. *Martínez-Serrano v. Quality Health Servs. of P.R., Inc.*, 568 F.3d 278, 286 (1st Cir. 2009) (citing *Lama v. Borras*, 16 F.3d 473, 478 (1st Cir. 1994)). Causation need not be established with mathematical accuracy; neither must all other causes of injury be eliminated, however, "a jury normally cannot find causation based on mere speculation and conjecture." *Lama*, 16 F.3d at 478 (citation omitted). Expert testimony is generally indispensable for establishing causation, given the complex medical and scientific issues often involved in medical malpractice cases. *See Cruz-Vázquez v. Mennonite General Hosp., Inc.*, 613 F.3d 54, 56 (1st Cir. 2010) (citing *Pagés-Ramírez v. Ramírez-González*, 605 F.3d 109, 113 (1st Cir. 2010)).

Defendants invoke Rule 56 of the Federal Rules of Civil Procedure, arguing that the medical malpractice claims against Dr. Dubocq and SIMED "are not sustainable as a matter of law." (**ECF No. 84 at 1**). The crux of their argument is that Plaintiff is unable to demonstrate causation. *Id*. at 2. First, they contend that there is no evidence connecting any actions or omissions by Dr. Dubocq to the initial injury Plaintiff sustained to her ureter. *Id*. Specifically, Defendants contend, that "the injury to the left ureter occurred during the hysterectomy performed on October 14, 2019," which "Dr. Dubocq did not participate in." (**ECF No. 85 at 4 ¶ 18**). Second, Defendants claim that "Dr. Dubocq was not even consulted regarding [Plaintiff] until she was admitted to Bayamón Medical

Center by Dr. Báez on November 9, 2019." *Id.* Defendants emphasize that Dr. Dubocq's interactions with Plaintiff—as it pertains to the initial injury—were solely in his role as a urology consultant and were guided by the recommendations of Plaintiff's primary physician, Dr. Báez. (**ECF No. 84 at 9**).

In short, Defendants argue that because Plaintiff cannot show Defendants caused Plaintiff's ureter injury, there is "no genuine issue of fact" and thus, the claims against Defendants should be dismissed. *Id.* at 11.

As Plaintiff points out, the allegations of medical malpractice against Dr. Dubocq are not based on the surgery that injured her ureter, but instead on his actions "**after** the initial surgery." (**ECF No. 103 at 1**) (emphasis in the original). As such, Plaintiff asserts that it is irrelevant that there is no proof that Dr. Dubocq was involved in the surgery that initially injured Plaintiff's ureter. *Id.* Specifically, the Amended Complaint makes the following allegations, which Plaintiff contends Defendants failed to address in their summary judgment motion:

> On November 13, Dr. Dubocq allegedly failed to repair the ureter transection and "limited his intervention [to] installing a double J, which would never repair the ureter's transection and prolonged [Plaintiff's] suffering." (**ECF No. 63 at 9 ¶ 31; 18 ¶ 78**);
>
> On November 18, 2019, "Dr. Dubocq perforated the small intestine due to [his] failure to wait for at least 6 weeks after the injury, which required that a general surgeon be called in to fix the damages caused." (**ECF No. 63 at 11 ¶ 34; 17 ¶ 74**);
>
> On November 18, 2019, Dr. Dubocq performed an exploratory laparotomy in an attempt to repair the transected ureter. During the surgery, the catheter intended for the ureter was instead placed in the gonadal vein up to the IVC junction. This placement allegedly deviated from the standard of care and raises questions about Dr. Dubocq's professional training. (**ECF No. 63 at 10 ¶ 33**);
>
> On November 18, 2019, Dr. Dubocq "perforated [Plaintiff's bladder], which had to be repaired." (**ECF No. 63 at 11 ¶ 34**); and

After the November 18, 2019, surgery, Plaintiff "had a hypertensive crisis and a pleural effusion, in which liquid []accumulated in [a] pleural cavity outside the lung, which required that Plaintiff be intubated and mechanically ventilated for 3 days." (**ECF No. 63 at 11 ¶ 36**).

To support her claims, Plaintiff cites expert testimony from Dr. Daniel Cohen, a board-certified urologist. (**ECF No. 103 at 12**). Dr. Cohen posits that Dr. Dubocq's actions deviated from the proper standard of care and caused further injuries. *Id.* According to Dr. Cohen:

> "[t]he exploratory surgery performed by Dr. Báez and Dr. [Dubocq] well before the mandatory 6-week period . . . was the proximate cause of [Plaintiff's] bladder and bowel perforations and further damage to the ureter.. . . Drs. Báez and Dubocq and the hospital all fell below the standard of care.. . . Dr. Dubocq's operative intervention was [] substandard.. . . [as he] mistakenly placed said catheter in [Plaintiff's] gonadal vein . . . risking severe vascular damage and death.

(**ECF Nos. 103 at 13-14; 103-11 at 2; 103-12 at 1-2**). Moreover, Dr. Cohen opined that, Dr. Dubocq's "decision to operate on November 18, 2019 . . . contributed . . . to . . . complications . . ." and "Dr. Dubocq provided substandard medical care during the November 18, 2019 operation." (**ECF Nos. 103 at 13-14; 103-11 at 2-3; 103-12 at 1**).

The crux of Plaintiff's grievance with Dr. Dubocq does not relate to the surgical procedure conducted on October 14. Rather, her claim against Dr. Dubocq originates from the subsequent medical treatment she was administered by him, beginning on November 9, 2019. (**ECF No. 103 at 22**). To that end, Plaintiff highlights that glaringly absent from Defendants' Motion, is argumentation against the injuries she suffered from November 9, onward, allegedly at the hands of Defendants.

In considering Defendants' Partial Motion for Summary Judgment, the Court observes Defendants, faced with a litany of allegations, have elected to address only the

least damaging among them, which are also not in dispute. This selective approach does not meet the standard required for the granting of summary judgment.

As mentioned, under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Pena v. Honeywell Int'l, Inc.*, 923 F.3d 18, 26-27 (1st Cir. 2019) (quoting Fed. R. Civ. P. 56(a)). The movant carries the initial burden of demonstrating the absence of a genuine issue of material fact. *Hernández-Echevarría v. Walgreens de P.R., Inc.*, 13-cv-1757, 2015 WL 4389519, at *4 (D.P.R. July 15, 2015) (quoting *Celotex*, at 323). Here, Defendants commit the cardinal sin of failing to address many of the substantive allegations launched by Plaintiff. (**ECF No. 84**). This does not meet the burden required by Fed. R. Civ. P. 56(a).

Further exacerbating the issue, when considering allegations relating to the procedures performed after the October 14 surgery, Defendants' Motion merely asserts, "there is no case evidence to establish that . . . Dr. Dubocq['s] [actions] were inappropriate, negligently performed, that the same breached the standard of care in any manner and/or that they are the cause of [Plaintiff's] injuries." (**ECF No. 84 at 10**). Bald assertions such as these, devoid of evidentiary support or reasoned argumentation, do not meet the burden of establishing that there is no genuine issue of material fact for trial. *See Celotex Corp.*, at 322-323; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In the First Circuit, it is well-established that a party moving for summary judgment must affirmatively produce evidence that negates an essential element of the non-moving party's claim or demonstrate that the non-moving party has insufficient evidence to carry its burden at trial. *See Suárez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000); *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000). Defendants have done

neither. Defendants failed to produce affirmative evidence negating Plaintiff's claims. *See Pueblo Int'l, Inc.*, 229 F.3d 49 at 53. And Defendants failed to even acknowledge the expert testimony of Dr. Cohen used by Plaintiff to support her medical malpractice allegations. *See Carmona*, 215 F.3d 124 at 132.

In their reply to Plaintiff's Opposition, Defendants take a rather narrow view of the issues at hand. (**ECF No. 139**). They assert that their Motion was laser-focused "on the issue of causation, and the lack of any evidence linking any actions by Dr. Dubocq with the initial injury to the left ureter" on October 14, 2019. (**ECF No. 139 at 3 ¶ 5**); *see also* (**ECF No. 84 at 2**). They chide Plaintiff for "spending a considerable amount of ink" on matters they deem irrelevant, such as Dr. Dubocq's involvement in the surgery on November 18 and subsequent events. (**ECF No. 139 at 4 ¶ 6**). Defendants, while not admitting any fault, concede that factual controversies exist, particularly concerning the surgery scheduled for November 18. *Id.* at 3 ¶ 5. Yet, they argue that these controversies are immaterial to their Motion. *Id.* at 4 ¶ 6.

Defendants, in a gesture they no doubt consider a favor to the Court, have chosen to "refrain from overburdening the case docket" by not responding to what they dismiss as Plaintiff's "one-sided, self-serving" "allegations relating to the interventions by Dr. Dubocq ***after*** he was consulted by Dr. Báez." (**ECF No. 139 at 4 ¶ 6**) (emphasis in original). The irony of Defendants' position is not lost on the Court. Allegations in a complaint are, by their very nature, one-sided and self-serving. In essence, Defendants would have the Court believe that Plaintiff's Opposition is a mere distraction from the so-called main event—lack of causation. They assert there is "absolutely no need" to entertain arguments that deviate from this pinpointed issue. (**ECF No. 139 at 5**). It is as if they

wish the Court to focus solely on a case they would rather litigate—not the actual case at hand.

In light of these unaddressed material allegations, it is clear that what happened after Dr. Dubocq's initial involvement, and if his medical intervention was indeed substandard, are quintessentially factual questions that a jury, not this Court, must resolve. *See Ramírez-Vélez v. Centro Cardiovascular*, 05-cv-1732, 2007 U.S. Dist. LEXIS 81956, at *16 (D.P.R. Oct. 25, 2007) ("[I]ssues of deviations from the medical standard of care are questions of fact that must be decided by the jury."). Given the existence of "factual disagreements as to which reasonable minds may differ," Plaintiff is entitled to present her case to a jury. *See Cortés-Irizarry*, at 191-92.

Accordingly, the Court finds that Defendants have not met their burden to show there is no genuine dispute as to any material fact regarding Plaintiff's medical malpractice claims. *See Honeywell Int'l, Inc.*, 923 F.3d 18 at 26-27. Consequently, Defendants' Partial Motion for Summary Judgment on this particular medical malpractice claim is **DENIED**.

## V.  Conclusion

For the reasons set forth above, Defendants' Partial Motion for Summary Judgment is **DENIED**. (**ECF No. 84**).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 6th day of November 2023.

    */s/ María Antongiorgi-Jordán*
    **MARIA ANTONGIORGI-JORDAN**
    **UNITED STATES DISTRICT JUDGE**